[Civ. No. 50907. Second Dist., Div. Four. Aug. 9, 1977.]

CAROL DIANE GROSSLIGHT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
BEVERLY J. HOOVER, Real Party in Interest.

**COUNSEL**

La Follette, Johnson, Schroeter & Dehaas and Alfred W. Gerisch, Jr., for Petitioner.

No appearance for Respondent.

Dryden, Harrington & Swartz, George J. Franscell and Timothy P. Johnson for Real Party in Interest.

**OPINION**

**KINGSLEY, Acting P. J.**—Petitioner, a girl of approximately 16 years, is one of the defendants in an action for personal injuries. Her parents are also parties defendant, on the theory that they had knowledge of petitioner's dangerous propensities for violence and that they had failed to exercise adequate control over her. The parents demurrer to the complaint was sustained for failure to state specific facts as to the alleged knowledge, but plaintiff was given time to amend and time to use discovery for the purpose of developing the required specific facts.

Plaintiff noticed a deposition of the custodian of records at a psychiatric hospital where petitioner has been treated. Petitioner moved for protective order. It is the theory of plaintiff that those records may show that the parents have given to the doctor a history of petitioner's condition that might include admissions by the parents of the alleged knowledge. The trial court issued an order for an *in-camera* examination by it of the records to determine whether there were any such records containing such admissions. For the reasons given below, we issue a peremptory writ to vacate that order.

I

The order as made is in excess of the jurisdiction of the trial court. (Evid. Code, § 915; *Carlton* v. *Superior Court* (1968) 261 Cal.App.2d 282, 293 [67 Cal.Rptr. 568].)

II

However, the attempted discovery must be prohibited for a more basic reason. Language in *Carlton* is to the effect that a litigant may take the

deposition of the custodian of records in order to ascertain the nature of documents and to identify persons who might be witnesses at trial. But *Carlton* limited that right by making it "subject to any proper objections." Since we conclude that statements, if any, by the parents are privileged under section 1014 of the Evidence Code, discovery procedures looking toward the identification of such privileged statements are also subject to the same privilege.

Evidence Code section 1014 provides that a patient has a privilege to refuse to disclose and to prevent others from disclosing a *confidential communication* between the patient and psychotherapist.[1] Evidence Code section 1011 defines patient as the person who seeks diagnosis and treatment and who submits to the examination.[2] The question before this court is whether the communications by petitioner's parents to the psychiatric hospital concerning petitioner's behavior are within the purview of the psychotherapist privilege of Evidence Code section 1014 and are therefore absolutely privileged.

---

[1]Evidence Code section 1014:

"Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist *if the* privilege is claimed by:

"(a) The holder of the privilege;

"(b) A person who is authorized to claim the privilege by the holder of the privilege; or

"(c) The person who was the psychotherapist at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure.

"The relationship of a psychotherapist and patient shall exist between a psychological corporation as defined in Article 9 (commencing with Section 2995) of Chapter 6.6 of Division 2 of the Business and Professions Code or a licensed clinical social workers corporation as defined in Article 5 (commencing with Section 9070) of Chapter 17 of Division 3 of the Business and Professions Code, and the patient to whom it renders professional services, as well as between such patients and psychotherapists employed by such corporations to render services to such patients. The word 'persons' as used in this subdivision includes partnerships, corporations, associations and other groups and entities."

[2]Evidence Code section 1011: "As used in this article, 'patient' means a person who consults a psychotherapist or submits to an examination by a psychotherapist for the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his mental or emotional condition or who submits to an examination of his mental or emotional condition for the purpose of scientific research on mental or emotional problems."

It is true that confidential communications have been statutorily defined as communications between the psychotherapist and "patient,"[3] and the parents herein are not literally "the patient." ■ It is also true, as real party in interest contends, that the attorney-client privilege does not protect information coming from a third party who is not a client unless the person is acting as the client's agent. (*People* v. *Lee* (1970) 3 Cal.App.3d 514, 527 [83 Cal.Rptr. 715].) We find it unnecessary to determine whether petitioner's parents were acting as her agent, so as to bring the parents' communications under the above exception in *People* v. *Lee*. Also, the fact that the parents are not literally the patient is not crucial.

We rely instead in part on the reasoning of *In re Terry W.* In the case of *In re Terry W.* (1976) 59 Cal.App.3d 745 [130 Cal.Rptr. 913], the court said (at p. 748): "There are undoubtedly situations where a communication from child to parent falls within the attorney-client or other professional privilege. Where, for example, the communication to the parent is to further the child's interest in communication with, or is necessary for transmission of information to, a lawyer (Evid. Code, § 952), a physician (Evid. Code, § 992), or a psychotherapist (Evid. Code, § 1012), the communication is protected by the pertinent statutory privilege."

■ In the case at bar there is no actual, factual showing that the communication (if any) between the parents and hospital personnel is to further the child's interest in communication with a psychotherapist or with psychiatric personnel or that it was necessary for transmission of information to the psychotherapist. However, such communications between parent and hospital are for the purpose of furthering the child's interest in communicating with the psychotherapist and are to facilitate the diagnosis and treatment of the child.

Real party in interest argues that *In re Terry W.* is inapplicable because petitioner is 17 years of age and did not require the presence of her

---

[3]Evidence Code section 1012: "As used in this article, 'confidential communication between patient and psychotherapist' means information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship."

parents to communicate with her treating physicians. Although the petitioner at 16 or 17 is clearly old enough verbally to communicate with her doctors, the nature of her problem is psychiatric, and it is entirely possible that her psychiatric illness precludes objective, accurate and complete communication by her with hospital personnel without the cooperation of her parents.

Real party in interest argues that the privilege belongs to the patient, and not the patient's family, relying on *State* v. *Clevenger* (1966) 69 Wn.2d 136 [417 P.2d 626]. In that case, the defendant's father was accused of abusing his child, and defendant had provided the hospital with a history of his daughter's injuries. The court held it was proper for the family physician to testify to the defendant father's statement to him that he was responsible for the child's injuries, because the privilege belongs to the patient and not the father. *Clevenger* is distinguishable from the case at bar. In *Clevenger,* the defendant attempted to assert the privilege of the patient for the defendant's own benefit and not the patient's benefit. In the case at bar, the inclusion of the communications by parents within the scope of the privilege benefits the patient. It is true, of course, that the inclusion of the history given by the parents as being within the scope of the psychotherapist-patient privilege in the instant case may ultimately benefit the parents in the lawsuit against them for negligent supervision. However, in general, the inclusion of the history given by the parents to the hospital as being within the scope of the psychotherapist-patient privilege of Evidence Code section 1014 primarily and essentially benefits the patient, not the patient's parents. To include these communications by the parents as within the purview of the privilege encourages full disclosure of pertinent matters that otherwise might be withheld by the embarrassed parents to the detriment of the patient.

■ Our holding in the case at bar is consistent with the purposes of Evidence Code section 1014. The psychotherapist-patient privilege is to be liberally construed in favor of the patient. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 337 [107 Cal.Rptr. 309, 508 P.2d 309].) In its comments on section 1014, the Senate Committee on Judiciary said:

"A broad privilege should apply to both psychiatrists and certified psychologists. Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life. Research on mental or emotional problems requires similar disclosure. Unless a patient or research subject is assured that such

information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment or complete and accurate research depends.

"The Law Revision Commission has received several reliable reports that persons in need of treatment sometimes refuse such treatment from psychiatrists because the confidentiality of their communications cannot be assured under existing law. Many of these persons are seriously disturbed and constitute threats to other persons in the community. Accordingly, this article establishes a new privilege that grants to patients of psychiatrists a privilege much broader in scope than the ordinary physician-patient privilege. Although it is recognized that the granting of the privilege may operate in particular cases to withhold relevant information, the interests of society will be better served if psychiatrists are able to assure patients that their confidences will be protected."

█ Applying the rule of liberal construction and the underlying policy of section 1014 as above quoted, we hold that the privilege established by that section includes all relevant communications to psychotherapists and to psychiatric personnel,[4] by intimate family members of the patient.[5] Such inclusion of communications by intimate family members within the privilege of section 1014 will encourage the fullest disclosure by the patient's intimate family. Failure to include the communications of the parents to be within the privilege would cause an atrophy and erosion of the privilege inconsistent with the purposes of Evidence Code section 1014.

A New York case dealing with a different but a related issue has some language tending to support our decision. In *Denaro* v. *Prudential Ins. Co. of America* (1913) 154 App.Div. 840 [139 N.Y.S. 758], the court said (at p. 761): "[W]hen a physician enters a house for the purpose of attending a patient, he is called upon to make inquiries, not alone of a sick person, but of those who are about him and who are familiar with the facts, and communications necessary for the proper performance of the duties of a physician are not public, because made in the presence of his immediate family or those who are present because of the illness of the person."[6] █ In the case at bar, the communications from petitioner's parents are necessary for the proper performance of the

---

[4]Psychiatric personnel includes secretaries who take histories for the purpose of recording statements for the use of psychiatrists.

[5]We do not here determine whether the section 1014 privilege extends to nonfamily communications.

[6]See also *Bassil* v. *Ford Motor Co.* (1936) 278 Mich. 173 [270 N.W. 258, 107 A.L.R. 1491].

psychotherapist's duties, and applying the reasoning of the court in *Denaro*,[7] those communications also should not be public.

Let a peremptory writ of mandate issue, commanding respondent court, in its action No. WEC 44407, to vacate its order of April 8, 1977, ordering records in the custody of Westwood Hospital to be delivered to it for an *in camera* review, and to enter a new and different order granting the motion of petitioner, made on April 8, 1977, for a protective order.

Dunn, J., and Jefferson (Bernard), J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 6, 1977. Mosk, J., and Clark, J., were of the opinion that the petition should be granted.

---

[7]In *Denaro*, the question was whether the privilege was lost because of the presence of third parties, which is different from the question at bar.