[Civ. No. 56180. Second Dist., Div. Two. Aug. 6, 1979.]

GLACIER GENERAL ASSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
DENISE CAMOU et al., Real Parties in Interest.

**COUNSEL**

Ault, Midlam & Reynolds and Dan H. Deuprey for Petitioner.

No appearance for Respondent.

Richard D. Aldrich and Gideon Kanner for Real Parties in Interest.

**OPINION**

**COMPTON, J.**—This proceeding in mandamus arises out of a discovery order in an action against an insurance carrier, Glacier General Assurance Company (Glacier). The underlying action is based on a claim of "bad faith" failure to settle a medical malpractice claim within the policy limits.

The trial court issued an order requiring production of the entire litigation file of the attorney who represented Glacier and the defendant-doctor in the malpractice action.

Because this case appeared to us to be one of first impression and of general importance involving highly protected privileges we issued Glacier's petition for an alternative writ. (*Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180 [23 Cal.Rptr. 375, 373 P.2d 439].)

Dr. Spencer Thompson, an anesthesiologist, attended one Dolores Varea during the course of a minor operation. Mrs. Varea went into respiratory arrest, emerged from the operating room in a coma and, after lingering a few days, died. An action was filed by the heirs of the decedent against Dr. Thompson. Dr. Thompson's insurance coverage was $100,000. A judgment was rendered against him in the amount of

$617,946. Dr. Thompson assigned his alleged cause of action against Glacier to the heirs of the decedent who in turn instituted the present action.

In the malpractice action Glacier engaged the services of the law firm of Jacobs, Jacobs & Witmer. The plaintiff-heirs in the present action sought and obtained the above mentioned order pertaining to the Jacobs firm's file. Glacier objected on the grounds of the attorney-client and the work product privileges.

■ It is well settled that a cause of action by an insured against his insurance carrier for a wrongful failure to settle may be assigned. (*Brown v. Guarantee Ins. Co.* 155 Cal.App.2d 679 [319 P.2d 69].) Such an assignment carries with it all the rights of the assignor in whose shoes the assignee is said to stand. The instant litigation, then, is essentially between the insured and the insurer.

■ Both parties, former clients of the same attorney (*American Mut. Liab. Ins. Co. v. Superior Court,* 38 Cal.App.3d 579 [113 Cal.Rptr. 561]) during a period when all three were pursuing the common goal of defeating the claim against Dr. Thompson, are now adversaries. In this posture the doctor, through his assignees, seeks to discover the confidential communications between the lawyer and the other joint client Glacier—communications to which the doctor was not privy.

The delicacy of the lawyer's position in the tripart arrangement arising when an insurer, pursuant to its obligation to the insured, engages counsel to represent the latter in litigation, was aptly described in *American Mut. Liab. Ins. Co. v. Superior Court, supra,* at page 592 as follows: "[His] two obligations, one to insured and one to insurer, were both parts of a common, joint plan. Each of these lawyer-client relationships is endowed with confidentiality. Moreover, there is a sense in which each is independent of the other. For it may well be that in the full discharge of his obligation to his client-insurer, the attorney may communicate to the insurer objective evaluations of his client-insured, which are for the consideration only of the client-insurer in permitting it to discharge its duties to the insured under the insurance contract. Similarly there may be confidences indulged by the insured to the attorney which in turn are not intended for the insurer." Overall, however, the attorney's *primary* duty is to the insured.

Resolution of the instant dispute is directly controlled by Evidence Code section 962 which provides as follows: "Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)."

Relying on *American Mutual,* Glacier contends that Evidence Code section 962 should be interpreted as vitiating the privilege only as to those communications made to an attorney by joint clients in the presence of each other.

*American Mutual,* because of its procedural posture, did not involve Evidence Code section 962. That case evolved against the background of a series of malpractice actions against a medical doctor. After litigating two of the actions, in which judgments in excess of the malpractice insurance were obtained against the doctor, the latter filed a "bad faith" action against the carrier *American Mutual.* Other malpractice actions were still pending and unresolved.

The lawyer whom *American Mutual* had engaged to represent the doctor, withdrew from the remaining cases apparently because of the serious allegations of misconduct which the doctor pleaded in his complaint against *American Mutual.* Subsequently, in *one of the pending malpractice actions* plaintiff sought access to the former lawyer's files.

So far as is relevant here *American Mutual* held that the insured *and* the insurer were both clients of the attorney, each enjoying the protection of the attorney-client privilege. Further, the court held that, *as against third parties,* neither client could waive the privilege for the other.

In the case before us the assertion of the privilege arises in the context of litigation *between the clients* and does not involve third parties. This is the specific situation for which Evidence Code section 962 was designed.

The comment by the California Law Revision Commission which accompanied the drafting of Evidence Code section 962 declares that the section "states existing law" and contains citations to cases. The parties

here have ably and thoroughly analyzed and briefed, in accordance with their particular viewpoints, the various California cases on the issue which were extant at the time of the enactment of the Evidence Code.

We deem it unnecessary to lengthen this opinion by our own review of those cases. We think it suffices to state that those cases state the general rule embodied in the language of Evidence Code section 962 and factually some, but not all of those cases, involve communications by joint clients made in the presence of each other. None of the cases, however, contains a direct holding that would limit the effect of Evidence Code section 962 to communications made by joint clients in the presence of each other. In cases involving these latter situations, vitiation of the privilege appears to rest simply on waiver.

Turning to the statute itself, we find nothing to suggest the limitation for which Glacier contends. The language that no client *"may claim a privilege . . . as to a communication made in the course of that relationship . . ."* (italics added) seem explicitly and unambiguously to include *all* communications—bilateral as well as trilateral. If the Legislature had meant otherwise it could have easily said so. It is not for us to rewrite the statute.

If there were a need to look beyond the language of the statute to determine its application in situations such as we have before us, the result would necessarily favor the insured because of the primacy of the duty the lawyer owes to the *insured*. (*American Mut. Liab. Ins. Co.* v. *Superior Court, supra,* 38 Cal.App.3d 579, at p. 592; *Lysick* v. *Walcom,* 258 Cal.App.2d 136 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].)

The underlying basis for the rule which permits the insured to obtain redress for a bad faith refusal of the insurer to settle within the policy limits is that the insurer may not place its own interests ahead of its insured and from its position of certainty of the limits on its own exposure "gamble" unreasonably with the insured's unlimited exposure for the excess.

To permit the insurer to use the attorney-client privilege to shield from its insured, communications which relate to the insurer's decision concerning settlement would be to place the insured in a secondary rather than a primary position in his relationship with the attorney, seriously eroding the insured's ability to establish that the insurer had failed in its duty to him.

While no California case appears to have dealt directly with the issue, courts in other jurisdictions have done so and opted for the rule which we have adopted here. (*Henke* v. *Iowa Home Mutual Casualty Company*, 249 Iowa 614 [87 N.W.2d 920]; *Dumas* v. *State Farm Mutual Automobile Ins. Co.* 111 N.H. 43 [274 A.2d 781]; *Brasseaux* v. *Girourd* (La. 1968) 214 So.2d 401; *Nationwide Mutual Automobile Insurance Company* v. *Smith*, 280 Ala. 343 [194 So.2d 505].)

It must be observed that the position which we here take "cuts two ways." If in the course of the relationship the attorney and the *insured* discuss the matter of settlement and the ramifications thereof, those communications would not be privileged in any action between the insured and the insurer.

We are aware, of course, of the possibility that an attorney's file may contain communications with the insurer on matters affecting their relationship generally, especially where the attorney or his firm handle a number of cases for a particular insurance carrier. Such communications may well be irrelevant to and nondiscoverable in a specific matter of litigation.

The insurer is not totally unprotected. There is a limitation to be found in the statute itself. The limiting phrase is "a matter of common interest." Application of Evidence Code section 962 to communications between insured, insurer and counsel then is tested only by that limiting phrase and not, as Glacier contends, by the requirement of "in the presence of each other."

We wish to emphasize, however, that when an insurer, as required by its contract of insurance, employs counsel to defend its insured, any communication with the lawyer concerning the handling of the claim against the insured, is necessarily a matter of common interest to both the insured and the insurer.

In the case before us we are not informed of the specific nature of the documents contained in the file which plaintiffs seek to examine. We do

observe, however, that the notice to produce appears to seek only matters which would be of common interest to both clients.[1]

The alternative writ is discharged, the petition for peremptory writ is denied.

Roth, P. J., and Beach, J., concurred.

---

[1]The notice reads in part as follows: ". . . the entire litigation file of Jacobs, Jacobs & Witmer pertaining to its defense of SPENCER DAVID THOMPSON, M.D., in Los Angeles Superior Court Action #C 9706 including, but not limited to the following: All correspondence and documents contained in said litigation file including but not limited to any and all correspondence and documents exchanges between Jacobs, Jacobs and Witmer and GLACIER GENERAL ASSURANCE COMPANY or CASUALTY INDEMNITY EXCHANGE pertaining to all evaluations of liability and damages in Los Angeles Superior Court Action No. C 9706; All memoranda contained in said litigation file, including but not limited to, any and all correspondence and documents exchanged between Jacobs, Jacobs & Witmer and GLACIER GENERAL ASSURANCE COMPANY or CASUALTY INDEMNITY EXCHANGE pertaining to all evaluations of liability and damages in Los Angeles Superior Court action No. C 9706; All status reports written by Jacobs, Jacobs & Witmer (any member or associate thereof) concerning the status of Los Angeles Superior Court action No. C 9706; Copies of all insurance coverage information contained in your litigation file pertaining to insurance coverage as to Spencer David Thompson, M.D. for incidents as alleged in the Los Angeles Superior Court Action No. C 9706; Any and all case summaries progress reports and the like prepared by Jacobs, Jacobs & Witmer (any member or associate thereof) and forwarded to either GLACIER GENERAL ASSURANCE COMPANY or CASUALTY INDEMNITY EXCHANGE pertaining to Los Angeles Superior Court action No. C 9706; All documents and memoranda contained in the file pertaining to any reserves placed upon this case (Los Angeles Superior Court action No. C 9706) pertaining to Spencer David Thompson, M.D."