[No. AO23867. First Dist., Div. Two. Feb. 21, 1984.]

AETNA CASUALTY AND SURETY COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
JAN PIETRZAK et al., Real Parties in Interest.

COUNSEL

Peter J. Thurston, Donald E. Sloan, Judith H. Pearce and Gibson, Dunn & Crutcher for Petitioners.

No appearance for Respondent.

Peter B. Brekhus, Scott A. Williams, Brekhus & Williams, Ralph Arnsdorf and Richard A. Canatela for Real Parties in Interest.

OPINION

**KLINE, P. J.**—This proceeding in mandamus arises out of a discovery matter in an action against an insurance company, the Aetna Casualty and Surety Company (Aetna). The underlying action is one for declaratory relief in which a counter claim for bad faith denial of insurance coverage has been filed.

Because the issues raised in Aetna's petition for writ of prohibition or mandamus involve a highly protected privilege, we granted Aetna's petition and issued the alternative writ. (*Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]; *Glacier Gen. Assurance Co.* v. *Superior Court* (1979) 95 Cal.App.3d 836, 838 [157 Cal.Rptr. 435].)

FACTS

Jan Pietrzak (Pietrzak), one of the real parties in interest herein, owned a home in Marin County which was insured under a fire and casualty insurance policy issued by Aetna. On January 4, 1982, a severe rainstorm touched off a mud slide which completely destroyed Pietrzak's home. Pietrzak subsequently filed a claim for compensation for the loss. Aetna retained the law firm of Thornton, Taylor & Downs (Thornton) to assist in the investigation of this claim. In May of 1982 Aetna filed a declaratory relief action claiming that Pietrzak's insurance policy did not cover damages caused by "earth movement or flooding." Although Thornton apparently assisted Aetna in determining whether the insurance policy covered the damage to Pietrzak's home, because of a possible conflict of interest Thornton withdrew as counsel for Aetna prior to the time the declaratory relief action was commenced. The declaratory relief action was filed by Aetna's new counsel, Gibson, Dunn & Crutcher.

In response to the declaratory relief action, Pietrzak filed a claim alleging bad faith denial of insurance coverage. Pietrzak then served a subpoena duces tecum on Thornton's custodian of records requiring the custodian to produce Thornton's files regarding its investigation of the Pietrzak claim. In addition, Pietrzak served notices of deposition on two Thornton attorneys who had been involved in investigating the Pietrzak claim.

Aetna, through its new counsel, resisted discovery by filing a motion to quash the subpoenas or for a protective order. Aetna argued below and reiterates here that much of the information in the files is protected by the attorney-client privilege. Aetna also maintains that some of the documents in the file are attorney work product and thus protected by the work product privilege. These claims were supported by the declaration of Thornton's custodian of records, which seeks to establish why the documents in question are privileged. Aetna also contended below and continues to contend here that any relevant information possessed by the two attorneys whom Pietrzak seeks to depose is protected by the attorney-client privilege.[1] The judge denied Aetna's motions, but stayed his order until such time as we could rule on Aetna's petition for a writ.

For reasons that shall be set forth, we conclude that the judge below erred in denying Aetna's motions, that the order should be vacated, and we therefore direct issuance of a peremptory writ of mandate.

DISCUSSION

A. *The Attorney-client Privilege*

The opposition to the motions below and to Aetna's petition for extraordinary relief indicate that Pietrzak impliedly admits that the attorney-client privilege would protect at least some of the information sought to be discovered, except that Aetna has either waived the privilege or that certain exceptions to the attorney-client privilege apply in this case. In other words, Pietrzak does not dispute that at least some of the information sought to be discovered was originally intended as a "confidential communication" between a lawyer and client. (Evid. Code, § 954.) Pietrzak asserts, however, that the usual protections of the attorney-client privilege do not apply in this case first, because he and Aetna were joint clients of Thornton; second, because Aetna is relying on "advice of counsel" as a defense to the action for bad faith denial of insurance coverage; third, because Thornton was retained by Aetna to "act in the capacity of an agent other than an attorney"; and finally, because Aetna's state of mind is at issue. These alleged

---

[1]This contention was supported below by the declarations of the two attorneys.

"exceptions" are either inapplicable to the facts of this case or without foundation in law.

### 1. *The Joint Client Exception.*

■ Pietrzak asserts that the attorney-client privilege does not here apply because of the joint client exception of Evidence Code section 962. This section provides that "Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)."[2]

In essence, Pietrzak argues that Aetna had a duty to conduct a neutral investigation of his claim, that any attorney hired to assist in such investigation was necessarily consulted upon a matter of common interest, and that therefore he and Aetna were in effect joint clients of the investigating attorney.

To support his claim that Aetna had a duty to carry out a neutral investigation in such a manner as to safeguard his interests, Pietrzak relies upon the following language from *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141]: "For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it . . . *must give at least as much consideration to the latter's interests as it does to its own.* [¶] The insured in a contract like the one before us does not seek to obtain a commercial advantage by purchasing the policy—rather, he seeks protection against calamity. . . . The purchase of such insurance provides peace of mind and security . . . . *To protect these interests it is essential that an insurer fully inquire into possible bases that might support the insured's claim.*" (*Id.*, at pp. 818-819 (italics added).) Pietrzak then states: "The Supreme Court made it clear in *Egan* that an insurance carrier has an obligation to conduct a neutral investigation in response to claims submitted by its insureds. . . . [¶] Thus, to the extent that an insurer finds it necessary to retain counsel to assist in the investigation of an insured's claim, counsel could only be hired on behalf of both the insurer and the insured to investigate a matter of common interest."

---

[2]Although Pietrzak specifically cited section 962 in his opposition to the motions below, he does not explicitly rely upon this section in his response to the instant petition. In other respects, his argument below on this point is substantially the same as that advanced here. We assume, despite his silence, that Pietrzak is still relying on section 962, since without this section his conclusion (that the attorney-client privilege does not apply because Thornton was hired to represent both the insured and the insurer) would be reduced to a non sequitur.

To bolster his position Pietrzak cites *Glacier Gen. Assurance Co.* v. *Superior Court, supra,* 95 Cal.App.3d 836. In *Glacier,* the appellate court determined that the joint client exception was applicable where an insurance company hired an attorney to represent the insured and the insurance company in defending a malpractice action. The court stated: "[W]hen an insurer, as required by its contract of insurance, employs counsel to defend its insured, any communication with the lawyer concerning the handling of the claim against the insured, is necessarily a matter of common interest to both the insured and the insurer." (*Id.,* at p. 842.) The court reasoned that since the attorney was consulted on a matter of "common interest," the joint client exception applied.

*Egan* and *Glacier* are, however, factually inapposite, because in neither of those cases was there any legal dispute on the basic issue of coverage, nor the hiring of counsel by the carrier with respect thereto. As Aetna points out, our more recent decision in *Houston Gen. Ins. Co.* v. *Superior Court* (1980) 108 Cal.App.3d 958 [166 Cal.Rptr. 904], is much more germane. In *Houston,* an insured brought suit against an insurance company (Houston) for bad faith failure to defend and sought discovery of the claims file. Houston apparently complied with the request to produce the claims file, but excised from the "file activity log" notes of three conversations between Houston's representative and a San Francisco lawyer (Arnold). The majority found that, as in this case, the attorney had been consulted by the insurer only to determine whether it had an obligation to defend the insured against a personal injury suit. The telephone conversations concerned the insurance company's legal obligation to defend. (*Id.,* at p. 961.) Accordingly, we held the insured was not entitled to production of the excised portions of the claims file.

In *Houston,* as in the present case, the insurance company argued that the material sought to be discovered was protected by the attorney-client privilege and that the joint client exception did not apply. In agreeing that that exception did *not* apply, the majority in *Houston* stated: "Our review of the record in the instant case convinces us that an essential prerequisite for the establishment of a joint client relationship, i.e., the *employment* of the attorney by the insurance company *to defend the claim against the insured,* has not been established." (*Houston, supra,* 108 Cal.App.3d at p. 964, italics in original.) In the present case, Thornton was, of course, never employed to defend a claim made against real party. Rather, as in *Houston, Thornton was merely consulted to assist Aetna in determining the extent of it's obligation to the insured.*

The *Houston* court also stated: "It is apparent from the foregoing that the lawyer-client privilege protected confidential communications between Ar-

nold and Houston prior to Houston's acceptance of its obligation under the policy and its employment of an attorney to defend the action filed against its insured." (*Houston, supra,* 108 Cal.App.3d at p. 966.) Thus, *Houston* stands for the proposition that consultations regarding a policy of insurance between an insurance company and its attorney *prior to the time the insurance company has accepted its obligations under that policy* are protected by the attorney-client privilege vis-à-vis the person insured by the policy. Such a rule makes perfect sense, as an insurance company should be free to seek legal advice in cases where coverage is unclear without fearing that the communications necessary to obtain that advice will later become available to an insured who is dissatisfied with a decision to deny coverage. A contrary rule would have a chilling effect on an insurance company's decision to seek legal advice regarding close coverage questions, and would disserve the primary purpose of the attorney-client privilege—to facilitate the uninhibited flow of information between a lawyer and client so as to lead to an accurate ascertainment and enforcement of rights. (*City & County of S.F.* v. *Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418]; *Houston Gen. Ins. Co.* v. *Superior Court, supra,* 108 Cal.App.3d 963.)

We therefore conclude that the joint client exception to the attorney-client privilege does not apply to the facts before us.

2. *Advice of Counsel.*

 Pietrzak next contends that Aetna is relying on "advice of counsel" as a defense to the action for bad faith denial of insurance coverage, and that by relying on this defense Aetna waives the attorney-client privilege with respect to all communications with counsel concerning the transactions for which the advice was sought.

Preliminarily, there is a serious question whether the federal cases Pietrzak relies upon (*Panter* v. *Marshall Field & Co.* (N.D. Ill. 1978) 80 F.R.D. 718 and *Garfinkle* v. *Arcata National Corporation* (S.D. N.Y. 1974) 64 F.R.D. 688) have any application in California courts. Rule 501 of the Federal Rules of Evidence (28 U.S.C.), states that the rules of privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." This rule provides federal courts "'. . . with the flexibility to develop rules of privilege on a case-by-case basis,' . . ." (*Trammel* v. *United States* (1980) 445 U.S. 40, 47 [63 L.Ed.2d 186, 193, 100 S.Ct. 906]. As noted in *Dickerson* v. *Superior Court* (1982) 135 Cal.App.3d 93 [185 Cal.Rptr. 97], "[t]he courts of this state, however, are not free to create new privileges as a matter of judicial policy and must apply only

those which have been created by statute. [Citations.] Of course, real parties are not urging the adoption of a new privilege; they urge instead that an existing statutory privilege be limited by the creation of an exception to it. Such an action on the part of the courts is similarly precluded, however, because the area of privilege 'is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme.' (Evid. Code, § 911, Cal. Law Revision Com. comment.)" (*Id.*, at p. 99.)

In any event, we need not pursue this distinction between the federal and state rules because it appears that Aetna is not in fact relying on an "advice of counsel" defense. As set forth in its brief in support of the instant petition, "Aetna is not saying that their conduct was reasonable *because their counsel opined so,* but rather that their conduct was reasonable because the *facts* indicated that no valid claim existed." (Italics in original.) Stated differently, Aetna claims it acted as it did not because it was advised to do so, but because the advice was, in its view, correct; and it is prepared to defend itself on the basis of that asserted correctness rather than the mere fact of the advice. Such a defense does not waive the attorney-client privilege.

### 3. *Thornton was employed by Aetna in its capacity as attorney.*

Pietrzak's next argument is that the attorney-client and work product privileges does not apply here because Thornton was employed "to act in the capacity of an agent other than an attorney"; more particularly, Pietrzak claims Thornton was hired to act as some form of outside claims adjuster, rather than to render legal advice. Pietrzak cites four cases to support this argument: *Estate of Perkins* (1925) 195 Cal. 699 [235 P. 45]; *Hager* v. *Shindler* (1865) 29 Cal. 47; *Montebello Rose Co.* v. *Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1 [173 Cal.Rptr. 856]; and *Watt Industries, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 802 [171 Cal.Rptr. 503].

The courts found in those cases that the attorney-client privilege did not apply without qualification where the attorney was merely acting as a negotiator for the client (*Montebello, supra,* 119 Cal.App.3d at p. 32), or merely gave business advice (*Estate of Perkins, supra,* 195 Cal. at p. 710), or was merely acting as a trustee for the client (*Hager* v. *Shindler, supra,* 29 Cal. at p. 68). In addition, it has been held that the work product privilege does not apply when an attorney merely acts as a business agent for a client by conveying the client's position to a contracting party. (*Watt Industries, supra,* 115 Cal.App.3d at p. 805.)

In all of the foregoing cases the client's dominant purpose in retaining the attorney was something other than the request for a legal opinion or advice.

However, as Pietrzak states in his own brief, in the case before us "Aetna retained Thornton to investigate Pietrzak's claim and make a coverage determination under the policy." This is a classic example of a client seeking legal advice from an attorney. The attorney was given a legal document (the insurance policy) and was asked to interpret the policy and to investigate the events that resulted in damage to determine whether Aetna was legally bound to provide coverage for such damage.

Furthermore, even assuming that Aetna retained Thornton for a purpose other than the rendition of legal advice, this does not mean ipso facto that all communications between Aetna and Thornton would not be protected by the attorney-client privilege. In *Montebello Rose Co., supra,* 119 Cal.App.3d 1, the court found that although communications received by the attorney in his role as negotiator were not subject to the protection of the privilege, those communications which were necessary to "secure or render legal service or advice" *were* protected. (*Id.,* at p. 32.) In *Montebello,* unlike the present case, the administrative agency conducted an *in camera* inspection of the communications which the real party in that case sought to discover. Following this inspection, the agency determined which documents represented a request for or the rendition of legal advice. Only those communications not involving legal advice were ordered produced. (*Id.,* at p. 31.)

In the instant case it appears that the judge did not conduct an *in camera* examination of the written or verbal communications which Pietrzak seeks to discover.[3] Instead, despite Aetna's prima facie showing via declaration that at least some of the communications were privileged, the judge, without inspecting those communications, refused to issue an order limiting Pietrzak's access to Thornton's files or the testimony of the attorneys. In these circumstances, it was error for the judge to give Pietrzak carte blanche access to the files and testimony, as he did.

## 4. *State of Mind.*

Pietrzak finally contends that by filing his bad faith action he has put Aetna's state of mind at issue and, because of this, the attorney-client privilege is not applicable. This argument is palpably untenable. If we were to

---

[3]Since there is no reporter's transcript of the hearing on the motion to quash and for protective order in the record before us, we cannot say for certain that an *in camera* inspection was not conducted. However, the judge's order states that his decision was made after "having read and considered the moving papers, and having heard oral argument of counsel . . . ." The order does not refer to an *in camera* inspection of the communications. In addition, neither Aetna's petition nor Pietrzak's response refers to any *in camera* inspection. Thus, on the record before us we assume that no *in camera* inspection was conducted.

adopt such a rule the attorney-client privilege would have no application in a myriad of actions where state of mind is an issue or could easily be made one.

Pietrzak relies entirely on *Merritt* v. *Superior Court* (1970) 9 Cal.App.3d 721 [88 Cal.Rptr. 337], which he describes as "nearly on point." In *Merritt* the appellate court found that the party resisting discovery (the plaintiff in the action) had *waived* the attorney-client privilege with respect to certain communications by bringing an action in which the state of mind of his former attorney was a critical factor. The court stated: "The court simply found that plaintiff had initiated a lawsuit in which he has placed in issue the decisions, conclusions and mental state of his then attorneys, particularly as to their confusion and disability allegedly caused by defendant's conduct which precluded them from making a settlement offer. It is obvious both from the issues framed and the contents of the depositions of plaintiff's prior counsel that plaintiff would rely heavily upon evidence to be given by his said counsel and that he would be using his prior counsel to prove matter which they could only have learned in the course of their employment. Thus it was not merely the initiation of the lawsuit but rather the manner of its prosecution which constituted the waiver." (*Id.*, at p. 730.)

In the present case, Aetna did not put the state of mind of its former attorney (Thornton) in issue by bringing the declaratory relief action. Rather, it was Pietrzak (the party *seeking* discovery) who put *Aetna's* state of mind at issue by filing a counter claim for bad faith denial of insurance coverage. If Pietrzak could in this manner waive the privilege on behalf of Aetna *Merrit* would be turned on its head and bad faith claims would surely proliferate as a new device for obtaining discovery.

Finally, Pietrzak ignores cases in which the courts have found that the attorney-client privilege applies even though the communications were relevant to the state of mind of insurance carriers in insurance "bad faith" litigation. (See, e.g., *Houston Gen. Ins. Co.* v. *Superior Court, supra,* 108 Cal.App.3d 958; *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579 [113 Cal.Rptr. 561].)

In short, the argument that the attorney-client privilege does not apply in this case because Aetna's state of mind is an issue is entirely without merit.

B. *The Work Product Privilege.*

In support of its motion below, Aetna attached thereto the declaration of Pamela Levin, the custodian of records for Thornton. Ms. Levin's declaration states that the following types of documents are included in the claims

file: "(a) letters containing *legal advice* from Thornton, Taylor and Downs to Aetna; [¶] (b) interoffice communications between attorneys; [¶] (c) letters and reports from Aetna to Thornton [sic], Taylor and Downs; [¶] (d) attorneys' memos to file detailing plans, *thoughts* and telephone conversations and meetings with Aetna; [¶] (e) attorneys' handwritten notes of telephone conversations with experts or investigators; [¶] (f) an outline of *legal strategy* and *approaches to litigation*; [¶] (g) notes about another case the office was handling at the time for Aetna; [¶] (h) letters from Pietrzak's attorney (Peter Brekhus) and a letter from a third-party claimant (Mrs. Bowers) to Aetna." (Italics added.)

■ The last paragraph of Code of Civil Procedure section 2016, subdivision (b), states: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, *and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.*" (Italics added.) It has been said that the emphasized portion of the language quoted creates an absolute privilege for a writing that reflects an attorney's impressions, conclusions, opinions or legal theories. Such a writing cannot be discovered under *any* circumstances. (*Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 68 [166 Cal.Rptr. 274].)

As noted earlier, it appears that the judge below did not conduct an *in camera* inspection of Thornton's files to discover if any documents were covered by the work product privilege. However, the affidavit quoted above seems to represent a prima facie showing that at least some of the items contained in the file are absolutely privileged. (See especially items (a), (d) and (f), quoted above.)

In his opposition to the motion below, Pietrzak argued that the work product privilege does not apply to the files in this case for two reasons.[4] The first is that the work product privilege assertedly only applies to materials "prepared in anticipation of litigation." This is incorrect. ■ As recently stated in *Rumac, Inc.* v. *Bottomley* (1983) 143 Cal.App.3d 810 [192 Cal.Rptr. 104], the work product privilege is not limited to documents

---

[4]In his response to the petition Pietrzak fails to clearly distinguish between arguments regarding the attorney-client privilege and those aimed at the work product privilege. In so doing, he ignores fundamental distinctions between the two privileges. The attorney-client privilege protects confidential *communications* between an attorney and his client (Evid. Code, §§ 950-954), whereas the work product privilege protects an attorney's *work product* regardless whether it has been communicated to the client. (Code Civ. Proc., § 2016, subd. (b).) To the extent Pietrzak's arguments considered earlier in this opinion may have been directed towards the work product privilege, we find them meritless.

prepared in anticipation of litigation but also applies to the work product of an attorney generated in his role as *counselor*. (*Id.*, at pp. 815-816.) It is clear in this case that Thornton was hired to provide legal counsel regarding the Pietrzak claim—thus, writings which reflect Thornton's impressions, conclusions, opinions or legal research or theories are absolutely privileged under the work product doctrine.

Pietrzak also argued below that the work product privilege is not absolute, since the work product of an attorney is discoverable when a party establishes a compelling need to gain access to the material (such as when the attorney's work product is the only evidence on an issue). It is true that the California work product privilege is not absolute *with respect to some documents*; however as earlier pointed out, certain writings (those containing an attorney's impressions, conclusions, opinions, or legal research or theories) are absolutely protected by this privilege. ■■■ As was also indicated earlier, Aetna presented affidavits to the court establishing a prima facie case that some of the documents contained in the files are absolutely privileged. However, instead of conducting an *in camera* inspection to determine whether and, if so, which documents were privileged, the court apparently rejected out of hand Aetna's request for a protective order. This was error.

*Conclusion.*

In sum, we find that the court below erred in denying Aetna's motions to quash the subpoenas or, in the alternative, for a protective order.

Let a peremptory writ of mandate issue directing the San Francisco County Superior Court to vacate its order of August 12, 1983, denying Aetna's motions and commanding said court to hold such further proceedings as are consistent with the views expressed in this opinion.

Rouse, J., and Smith, J., concurred.