100 Cal.Rptr.2d 763 (2000)
84 Cal.App.4th 285
Rallie P. RALLIS, Plaintiff and Appellant,
v.
Ralph CASSADY et al., Defendants and Respondents.
Nos. B127047, B131724.
Court of Appeal, Second District, Division Three.
October 24, 2000.
As Modified on Denial of Rehearing November 20, 2000.
Review Denied January 24, 2001.[*]
*766 Bidna & Keys and Richard D. Keys, Newport Beach, for Plaintiff and Appellant.
Sheppard, Mullin, Richter & Hampton, Gregory A. Long, Los Angeles, and Kristine N. Locke, for Defendants and Respondents Morgan, Lewis & Bockius, Hahn & Cazier and Hahn, Cazier & Smaltz.
Law Offices of Baird Brown and Baird Brown, Los Angeles, for Defendants and Respondents Ralph Cassady, Cassady Corporation and Cassady & Klein.
Perkins, Coie and Douglas L. Thorpe, Santa Monica, for Defendant and Respondent Davis Wright Tremaine.
CROSKEY, J.
Plaintiff Rallie P. Rallis sued defendants Ralph Cassady, Cassady Corporation, Cassady & Klein, Morgan, Lewis & Bockius, LLP (Morgan Lewis), Hahn & Cazier, Hahn, Cazier & Smaltz, and Davis Wright Tremaine (Davis Wright) for legal malpractice in January 1995. Rallis seeks reversal of the summary judgments granted in favor of each of these defendants. The trial court was persuaded that Rallis had sustained "actual injury" more than one year prior to the date when he filed this action and therefore his claims were barred by the statute of limitations. In reaching that result, the trial court rejected Rallis's argument that the running of the statute had been tolled by the defendants' continued representation of Rallis in certain Florida litigation. It determined that the defendants had only represented corporations founded by Rallis in which he was an officer, director, and shareholder, but had not represented him personally.
We conclude that triable issues of fact exist as to the running of the statute of limitations, as to some of the claims asserted against some of the defendants. Because we conclude that Rallis suffered an "actual injury" from the transactional matters that he claims were negligently handled more than one year before he filed his complaint, all of those claims are time-barred. We reach this conclusion because we hold that litigation arising from a negligently handled transactional matter is not the same "specific subject matter" (Code Civ. Proa, § 340.6, subd. (a)(2)) and so a necessary condition for tolling based on continuous representation fails. Thus, Rallis can only proceed against those defendants who represented him during the Florida litigation, and only upon claims arising from acts of professional negligence committed in the handling of that *767 litigation.[1] We therefore affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND[2]
To resolve the issues raised in this appeal requires an understanding of some of the many legal activities undertaken by defendant Cassady on behalf of Rallis over a 25-year period. Our factual review therefore is necessarily lengthy, although we have limited our discussion of facts to those relevant to Rallis's claims in this litigation.

1. The California and Florida Corporations
Cassady served as legal counsel for Rallis personally and for several corporations and business entities founded by Rallis at various times during the 25 year period beginning in 1969. Cassady practiced with the defendant law firms at different times during that period.[3]
Rallis founded a California corporation named American Hi-Lift Corporation of California (Hi-Lift (Cal.)) in 1975 and a Florida corporation named Mark Equipment Center of South Florida (MEC) in 1982. Both companies were equipment dealers, and Cassady counseled and performed legal services for Rallis with respect to their incorporation. Rallis acquired another Florida corporation in 1983 and changed its name to American Hi-Lift Corporation, a Florida Corporation (Hi-Lift (Fla.)). Again, Cassady counseled Rallis and performed the necessary legal services in the transaction. In addition, Cassady advised Rallis that MEC and Hi-Lift (Fla.) were separate legal entities but could be operated together as one company, but did not advise him of the risks of doing so.[4]
Rallis was an officer, director, and, either directly or through other entities, a shareholder in each of these three corporations. Cassady was a five-percent shareholder in MEC and was corporate secretary for both of the Florida corporations. Lynn Pope was president of MEC, and Edward Moloney was its general manager and a ten-percent shareholder.
MEC terminated Moloney's employment in 1984. Moloney disputed his discharge and demanded the rescission of his purchase of MEC stock. Cassady advised the corporation with respect to its dispute with Moloney both before and after it escalated into litigation against MEC in the Florida state court in 1987.

*768 2. The Sale of Assets of MEC and Hi-Lift (Fla.) and Sale of Stock of Hi-Lift (Cal.)

Prior to Moloney's initiation of that litigation, however, the directors and a majority of the shareholders in MEC and Hi-Lift (Fla.) approved the sale of all of the assets of both corporations in 1986. Cassady advised the two corporations concerning the transaction and effected the sale. The sales proceeds were distributed to the shareholders in exchange for their shares of stock which were then canceled, but the two corporations were not formally dissolved. As a result of this transaction, Moloney was the only remaining shareholder of MEC. He had not received any prior notice of the asset sale, did not tender his shares, and therefore did not receive any part of the sales proceeds.
Cassady also represented Rallis and Pope in the sale of their stock in Hi-Lift (Cal.) in February 1988 (about four months after Moloney filed his Florida action). Based on Cassady's advice, Rallis and Pope both agreed to personally indemnify and defend the purchaser of the stock against any liability that might arise (and be imposed upon Hi-Lift (Cal.) ) in Moloney's law suit.

3. The Florida Litigation
Moloney sued MEC, Cassady, and Pope in Florida state court in October 1987 (hereafter, the Florida litigation). The purpose of this action was to compel MEC to allow him to inspect its books and records and to recover damages for the defendants' refusal to allow an inspection and breach of fiduciary duty with respect to a corporate opportunity. MEC retained a Florida attorney to represent the corporation and its officers, Cassady and Pope. It is important to note that while MEC was a named defendant in this action, Rallis was not.
The court ordered an inspection of the corporate records, determined that Moloney was the sole remaining shareholder of MEC, and then, on Moloney's motion, allowed MEC to be renamed as a plaintiff in June 1990. Moloney then amended the complaint in July 1990 to name MEC as a party plaintiff (rather than as a defendant) and added Rallis and Hi-Lift (Cal.) as defendants in new causes of action for breach of fiduciary duty and other claims in which it was alleged that the defendants had caused injury to MEC. By this time, of course, the Hi-Lift (Cal.) stock had been sold (in February 1988) to a third party who, as already indicated, had received a promise of indemnity from Rallis for any liability imposed on Hi-Lift (Cal.) in the Florida litigation.
In order to at least partially address this indemnity burden, Rallis and Pope agreed, in May 1991, that Pope would receive all of the proceeds from the sale of their stock in Hi-Lift (Cal.) up to $300,000. By this agreement, Rallis gave up his right to receive his share of those proceeds in exchange for Pope's promise to indemnify and defend Rallis and the other defendants in the Florida litigation (including Hi-Lift (Cal.)), and to indemnify and defend Rallis against any liability arising from the Hi-Lift (Cal.) stock sale, including liability arising from their 1988 indemnity agreement given to the purchaser of that stock. Subsequently, in November 1993, both Rallis and Pope, in partial discharge of their 1988 agreement to provide that indemnity, accepted the tender of the defense of Hi-Lift (Cal.) in the Florida litigation.
Several different Florida law firms represented the named defendants in the Florida litigation from July 1990 to August 1993. For part of that period, the defendants were unrepresented. Rallis did not communicate with those attorneys, however, but only communicated with and relied on Cassady with respect to his defense. In August 1993, Pope retained new Florida counsel to jointly represent himself, *769 Cassady, Rallis, and Hi-Lift (Cal.).[5]
The Florida litigation went to trial and the jury returned a verdict in January 1994, awarding MEC $831,428 in compensatory and punitive damages against Rallis for breach of fiduciary duty and $429,000 in compensatory and punitive damages against Hi-Lift (Cal.) for breach of fiduciary duty. The court entered a judgment accordingly in May 1994. That judgment was affirmed on appeal in relevant part.

4. Rallis's Complaint
Rallis sued Cassady and the other defendants for legal malpractice in January 1995.[6] His second amended complaint alleges malpractice and other causes of action[7] arising from the various business transactions summarized above (hereafter, the prior matters) and from the Florida litigation.

5. The Initial Summary Judgment Motions
Cassady, Cassady Corporation, and Cassady & Klein moved for summary judgment or summary adjudication in May 1998 on the grounds that they did not represent Rallis personally in the Florida litigation or the prior matters (i.e., that they had represented only the corporate entities) and that the claims were barred by the statute of limitations. Contemporaneously, Morgan Lewis, Hahn & Cazier, and Hahn, Cazier & Smaltz also moved for summary judgment or summary adjudication in May 1998 on nearly identical grounds, except that they conceded that they had represented Rallis personally in the Hi-Lift (Cal.) stock sale. Davis Wright joined in both motions.
Rallis opposed these motions on the grounds that there were triable issues of fact as to whether the defendants had represented him in the Florida litigation and the prior matters and that, in any event, the limitations period was tolled under Code of Civil Procedure section 340.6 because (1) there was no actual injury until the entry of judgment in the Florida litigation (citing ITT Small Business Finance Corp. v. Niles (1994) 9 Cal.4th 245, 36 Cal.Rptr.2d 552, 885 P.2d 965) and (2) Cassady had continued to represent him in the Florida litigation.
The court took the motions under submission and issued a minute order in June 1998 granting the motions in part and denying them in part. It determined that the defendants had not represented Rallis personally in the Florida litigation or in the prior matters, excepting only Rallis's sale of stock in Hi-Lift (Cal.) in 1988. It noted evidence that Cassady, when he practiced with Morgan Lewis, had advised Rallis personally on the indemnity agreement in the stock sale. The court determined that Rallis had suffered actual injury arising from the operation of the Florida corporations and the winding up of MEC when he was named as a defendant in the Florida litigation in 1990 and was required to defend the action. Since Rallis did not file this action until January 1995, the malpractice claims would be time-barred even if the defendants had represented him personally in those matters. However, the trial court determined (in reliance on the holding in *770 ITT Small Business Finance Corp. v. Niles, supra, 9 Cal.4th 245, 36 Cal. Rptr.2d 552, 885 P.2d 965) that Rallis had not suffered actual injury arising from the indemnity agreement given in connection with the sale of the Hi-Lift (Cal.) stock until entry of the judgment against Hi-Lift (Cal.) in the Florida litigation which occurred within the one-year limitations period for legal malpractice. In August 1998, the court signed and entered orders granting summary adjudication in favor of Cassady, Cassady Corporation, and Morgan Lewis on all claims other than those arising from the 1988 indemnity agreement and granting summary judgment in favor of Cassady & Klein, Hahn & Cazier, Hahn, Cazier & Smaltz, and Davis Wright.
Rallis moved for a new trial or reconsideration of the rulings in September 1998. The court denied the motion as untimely in October 1998. Rallis does not challenge that ruling on appeal.[8]

6. The Later Summary Judgment Motions
Cassady, Cassady Corporation, and Morgan Lewis moved for summary judgment on the remaining causes of action in November 1998 and January 1999 based on the statute of limitations. They argued that under Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison (1998) 18 Cal.4th 739, 76 Cal.Rptr.2d 749, 958 P.2d 1062, a new decision by the Supreme Court handed down after the trial court's August 1998 order,[9] Rallis had suffered an actual injury arising from the indemnity agreement when he accepted the indemnitee's tender of defense in November 1993, or earlier.
Rallis maintained that his indemnity liability was uncertain and contingent until entry of the Florida judgment, that Cassady had continued to represent him during the Florida litigation giving rise to additional causes of action against the defendants, and that Cassady's continuous representation of him tolled the statute of limitations on his claims against the several defendants.
The trial court reaffirmed its earlier ruling that the defendants did not represent Rallis personally in the Florida litigation, determined that Rallis had suffered an actual injury arising from the indemnity agreement when he accepted the tender of defense in November 1993 at the latest, concluded that the claims against the defendants therefore were barred by the statute of limitations, and granted summary judgment in favor of the defendants in March 1999.
Rallis appealed from the judgments in favor of the defendants in two separate appeals which we have consolidated.

CONTENTIONS
Rallis contends (1) there are triable issues of fact as to whether the defendants represented him personally with respect to the operation of MEC and Hi-Lift (Fla.) and the winding up of MEC; (2) he did not incur actual injury arising from the defendants' representation in those matters until judgment was entered against him in the Florida litigation; (3) he did not incur actual injury arising from the defendants' representation of him in connection with his sale of stock in Hi-Lift (Cal.) and his agreement to indemnify until judgment was entered against Hi-Lift (Cal.) in the Florida litigation; and (4) there are triable issues of fact as to whether the defendants *771 represented him as a defendant in the Florida litigation so as to toll the limitations period on all of his claims.
Understandably, the defendants dispute each and every one of Rallis's contentions and urge us to adopt the reasoning of the trial court and affirm both judgments.

DISCUSSION

1. Standard of Review
Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proa, § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the cause of action cannot be established or that there is a complete defense. (Code Civ. Proa, § 437c, subd. (o)(2).) Once the defendant meets that burden, the burden shifts to the plaintiff to set forth "specifics facts" showing that a triable issue of material fact exists. (Ibid.)
On appeal, we independently assess the correctness of the trial court's ruling, applying the same legal standard that governs the trial court. (Silva v. Lucky Stores, Inc. (1998) 65 Cal.App.4th 256, 261, 76 Cal.Rptr.2d 382.) We construe the moving party's affidavits strictly and the opponent's affidavits liberally, and resolve any doubts as to the propriety of granting the motion in favor of the opponent. (Ibid.) We affirm the ruling if it is correct on any ground, regardless of the trial court's stated reasons. (Stratton v. First Nat. Life Ins. Co. (1989) 210 Cal.App.3d 1071, 1083, 258 Cal.Rptr. 721.) Although our review is de novo, we will not consider a potential ground for reversal unless the appellant has identified the error and argued the issue on appeal. (Reyes v. Kosha (1998) 65 Cal.App.4th 451, 466, fn. 6, 76 Cal.Rptr.2d 457.)

2. Attorney-Client Relationship
A cause of action for legal malpractice depends upon the existence of a duty of care ordinarily created by an attorney-client relationship.[10](Fox v. Pollack (1986) 181 Cal.App.3d 954, 959, 226 Cal. Rptr. 532.) An attorney-client relationship ordinarily is created by an express or implied mutual agreement that the attorney will render legal services for the client. (Ibid.; see 1 Mallen & Smith, Legal Malpractice (4th ed.1996) § 8.3, pp. 568-572.)
A contract is implied-in-fact when its existence and terms are manifested by the parties' conduct. (Civ.Code, § 1621.) The question of whether the parties' conduct evidences an implied-in-fact contract is a question of fact for the trier of fact (Foley v. Interactive Data Corp. (1988) 47 Cal.3d 654, 677, 682, 254 Cal. Rptr. 211, 765 P.2d 373; Del E. Webb Corp. v. Structural Materials Co. (1981) 123 Cal.App.3d 593, 611, 176 Cal.Rptr. 824), unless the underlying facts are undisputed and support only one conclusion (Eisenberg v. Alameda Newspapers, Inc. (1999) 74 Cal.App.4th 1359, 1386-1387, 88 Cal.Rptr.2d 802). The existence of an attorney-client relationship created by an implied-in-fact contract therefore is an issue of fact for the trier of fact, unless the underlying facts are undisputed and support only one conclusion.
A number of other cases, however, have caused some confusion on the point. These cases seem to state that the question of whether an attorney-client relationship exists is a question of law where the underlying facts are undisputed even though they may support more than one reasonable inference or conclusion. (See, e.g., Streit v. Covington & Crowe (2000) 82 Cal.App.4th 441, 444, 98 Cal.Rptr.2d 193 (Streit); Johnson v. Superior Court (1995) 38 Cal.App.4th 463, 477, 45 Cal.Rptr.2d 312 (Johnson); Responsible Citizens v. Superior Court. (1993) 16 Cal.App.4th 1717, *772 1733, 20 Cal.Rptr.2d 756 (Responsible Citizens); Houston Gen. Ins. Co. v. Superior Court (1980) 108 Cal.App.3d 958, 964, 166 Cal.Rptr. 904 (Houston Gen.); American Mut. Liab. Ins. Co. v. Superior Court (1974) 38 Cal.App.3d 579, 590-591, 113 Cal. Rptr. 561 (American Mut); Kraus v. Davis (1970) 6 Cal.App.3d 484, 491, 85 Cal.Rptr. 846 (Kraus); Meehan v. Hopps (1956) 144 Cal.App.2d 284, 287, 301 P.2d 10 (Meehan); DeLong v. Miller (1955) 133 Cal.App.2d 175, 178, 283 P.2d 762 (DeLong).)
It is our view that none of these authorities really addresses the issue before us. With two exceptions, they involved motions to disqualify an attorney for conflict of interest (Responsible Citizens, supra, 16 Cal.App.4th at p. 1721, 20 Cal.Rptr.2d 756; Kraus, supra, 6 Cal.App.3d at pp. 486-487, 85 Cal.Rptr. 846; Meehan, supra, 144 Cal. App.2d at pp. 285-286, 301 P.2d 10; DeLong, supra, 133 Cal.App.2d at p. 175, 283 P.2d 762) or motions to compel discovery of information as to which the attorney-client privilege had been asserted (Houston Gen., supra, 108 Cal.App.3d at p. 961, 166 Cal.Rptr. 904; American Mut, supra, 38 Cal.App.3d at pp. 582-583, 113 Cal. Rptr. 561). The remaining two cases, Streit and Johnson, involved the question of whether an attorney-client relationship existed for purposes of malpractice liability. (Streit, supra, 82 Cal.App.4th at p. 444, 98 Cal.Rptr.2d 193; Johnson, supra, 38 Cal.App.4th at p. 467, 45 Cal.Rptr.2d 312.) But neither case involved the determination of whether that relationship had been created by an implied-in-fact contract. (Streit at pp. 446-447, 98 Cal. Rptr.2d 193 [held that an attorney "specially appearing" on a motion owed a duty of care to the client]; Johnson, at pp. 478-479, 45 Cal.Rptr.2d 312 [held that regardless of whether an attorney-client relationship existed between an attorney for a partnership and the individual limited partners, the attorney owed the individuals a duty to avoid favoring the general partner in a transaction].)
We conclude that the correct rule concerning the establishment or creation of an attorney-client relationship by means of an implied-in-fact contract is the rule applicable to implied-in-fact contracts generally: the issue is a factual one to be resolved by the trier of fact unless the underlying facts are undisputed and support only one reasonable inference or conclusion. (Foley v. Interactive Data Corp., supra, 47 Cal.3d at pp. 677, 682, 254 Cal.Rptr. 211, 765 P.2d 373; Del E. Webb Corp. v. Structural Materials Co., supra, 123 Cal.App.3d at p. 611, 176 Cal.Rptr. 824; Eisenberg v. Alameda Newspapers, Inc., supra, 74 Cal. App.4th at pp. 1386-1387, 88 Cal.Rptr.2d 802.)
An attorney representing a corporation ordinarily does not represent its officers, directors, or shareholders individually. (Meehan, supra, 144 Cal.App.2d at p. 290, 301 P.2d 10.) However, the attorney may agree with an individual within the corporation to represent the individual in a particular matter.[11] In the absence of an express agreement between the parties, their conduct and the totality of the circumstances may establish an implied-infact contract creating an attorney-client relationship. (Cf. Del E. Webb Corp. v. Structural Materials Co., supra, 123 Cal. App.3d at p. 611, 176 Cal.Rptr. 824; see Kane, Kane & Kritzer, Inc. v. Altagen (1980) 107 Cal.App.3d 36, 40-42, 165 Cal. Rptr. 534; Miller v. Metzinger (1979) 91 Cal.App.3d 31, 39-40, 154 Cal.Rptr. 22.)
Circumstances that may support a finding of such an implied-in-fact contract include the following: (1) the attorney previously represented the individual, particularly where the representation occurred over a lengthy period of time or in several matters, or occurred without an express agreement or otherwise in circumstances *773 similar to those of the matter in question (see Kane, Kane & Kritzer, Inc. v. Altagen, supra, 107 Cal.App.3d at pp. 40-42, 165 Cal.Rptr. 534); (2) the attorney had personal contact with the individual in the course of representing the corporation (see Johnson, supra, 38 Cal.App.4th at p. 477, 45 Cal.Rptr.2d 312; Responsible Citizens, supra, 16 Cal.App.4th at p. 1733, 20 Cal.Rptr.2d 756); (3) the individual had a particular interest in the matter in question and had no independent counsel (see Johnson, at pp. 476-477, 45 Cal.Rptr.2d 312); (4) the individual sought legal advice from the attorney in the matter in question or the attorney provided advice (see Beery v. State Bar (1987) 43 Cal.3d 802, 811, 239 Cal.Rptr. 121, 739 P.2d 1289; Fox v. Pollack, supra, 181 Cal.App.3d at p. 959, 226 Cal.Rptr. 532); (5) the individual disclosed confidential information to the attorney concerning the matter in question (see Responsible Citizens, at p. 1733, 20 Cal. Rptr.2d 756); and (6) the individual paid fees or other consideration to the attorney in connection with the matter in question (see Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc. (1999) 69 Cal. App.4th 1399, 1403, 82 Cal.Rptr.2d 326; Fox, at p. 959, 226 Cal.Rptr. 532).[12] The presence or absence of one or more of these circumstances will not necessarily resolve the issue. As noted above, the determination as to the existence of an attorney-client relationship must be based on the totality of the circumstances.
An attorney who wishes to avoid the implication of an attorney-client relationship with an individual in circumstances where such a relationship may be implied should heed the sound advice of legal commentators to notify the individual in writing that he or she is not a client. (See 1 Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2000) ¶ 13:83, p. 3-23.)
The defendants here initially moved for summary judgment/adjudication based in part on Cassady's declaration that neither he nor the defendant law firms had represented Rallis personally in the prior matters (other than the Hi-Lift (Cal.) stock sale) or in the Florida litigation. The defendants also produced deposition testimony by a Florida attorney stating that he had represented Rallis and the other defendants in the Florida litigation for a period of time and other evidence indicating that Rallis and the Florida corporations were represented in the Florida litigation by Florida counsel.
Rallis responded with his own declaration stating that (1) Cassady had represented him personally in numerous personal and business matters since 1969, including the formation of corporations and other business entities in California and Florida; (2) Cassady typically represented the business entities after their formation; (3) Cassady had never informed him that Cassady was not his personal attorney or that Cassady's representation of the businesses precluded Cassady from representing Rallis personally in connection with the businesses or limited the scope of that personal representation; (4) Cassady had never requested a written retainer agreement; (5) Cassady had represented him in the formation of both MEC and Hi-Lift (Fla.), directed Florida counsel in that effort, and continued to advise him of his rights and obligations as an officer, director, and shareholder in MEC, Hi-Lift (Fla.), and related entities; (6) Cassady had arranged the sale of assets of MEC and Hi-Lift (Fla.) and personally informed him as to how he would receive part of the sales proceeds as a shareholder; (7) Cassady had represented him personally in the sale of his Hi-Lift (Cal.) stock and advised him on the indemnity *774 agreement that he provided; and (8) notwithstanding the fact that Rallis had Florida counsel, Cassady had repeatedly advised him concerning his defense and potential settlement of the Florida litigation, had participated in the preparation of discovery responses by Rallis, and had prepared Rallis for his trial testimony.
This evidentiary record is more than sufficient to create a triable issue of fact as to whether an implied-in-fact contract existed creating an attorney-client relationship between Cassady, and his respective law firms, and Rallis with respect to these matters. In light of the conflicting reasonable inferences that may arise from these asserted facts (even though they might otherwise be undisputed by the parties) as to whether an implied agreement existed, the issue cannot be decided on summary judgment as a matter of law.

3. Actual Injury
The one-year limitations period for a legal malpractice action begins to run when the plaintiff actually discovers or reasonably should have discovered the facts of the attorney's wrongful act or omission. (Code Civ. Proa, § 340.6, subd. (a).)[13] However, the period is tolled until the plaintiff suffers actual injury.[14] (Code Civ. Proa, § 340.6, subd. (a)(1).)
Actual injury means any damages compensable in a legal malpractice action based on the asserted act or omission. (Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, supra, 18 Cal.4th at pp. 743, 751, 76 Cal.Rptr.2d 749, 958 P.2d 1062.) The cost or increased cost of litigation due to an attorney's act or omission is an actual injury (id at pp. 743-744, 750-751, 76 Cal.Rptr.2d 749, 958 P.2d 1062), as is the loss or diminution of a right or remedy (id at p. 750, 76 Cal. Rptr.2d 749, 958 P.2d 1062; Adams v. Paul (1995) 11 Cal.4th 583, 590, 46 Cal. Rptr.2d 594, 904 P.2d 1205). The fact that future events such as the adjudication or settlement of an action might affect the permanency of the plaintiffs injury or determine the amount of damages does not make the existing injury speculative or contingent, and the existence of actual injury does not depend on those later events. (Jordache, at pp. 754-755, 763, 76 Cal. Rptr.2d 749, 958 P.2d 1062, overruling ITT Small Business Finance Corp. v. Niles, supra, 9 Cal.4th 245, 36 Cal.Rptr.2d 552, 885 P.2d 965; Adams, at p. 591, 46 Cal. Rptr.2d 594, 904 P.2d 1205.)
The question of when an actual injury occurred is predominantly a factual issue, but when the material facts are undisputed it can be decided as a matter of law on summary judgment. (Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, supra, 18 Cal.4th at p. 751, 76 Cal.Rptr.2d 749, 958 P.2d 1062.)
Rallis contends the Florida litigation resulted in part from the defendants' acts or omissions as his legal counsel with respect to the joint operation of MEC and *775 Hi-Lift (Fla.) and the winding up of MEC. Based on that allegation and the undisputed facts, we conclude that he suffered an actual injury arising from the defendants' alleged representation of him in those matters when he first incurred defense costs in the Florida litigation or sustained the loss or diminution of a right or remedy. That occurred no later than May 1991, when Rallis agreed that Pope would receive his share of the proceeds from the Hi-Lift (Cal.) stock sale up to $300,000 and would apply those funds to the defense of the Florida litigation pursuant to the 1988 indemnity agreement.
Rallis suffered an actual injury arising from the defendants' alleged representation of him with respect to the indemnity agreement in the Hi-Lift (Cal.) stock sale no later than November 1993 when he accepted the indemnitee's tender of defense of the Florida litigation. At that time, if not sooner, he began to incur liability for the defense costs of Hi-Lift (Cal.). The fact that Pope paid those defense costs from their joint sales proceeds pursuant to his May 1991 agreement with Rallis does not alter the fact of an existing injury.
Based on the foregoing, Rallis has not shown error in the trial court's determination that he suffered actual injury with respect to the malpractice claims more than one year before filing his complaint in this action. Rallis can avoid the bar of the statute of limitations only if he establishes another basis for tolling.

4. Continuous Representation,
The one-year limitations period for legal malpractice is also tolled while the attorney continues to represent the plaintiff regarding the same "specific subject matter." (Code Civ. Proa, § 340.6, subd. (a)(2).) The two principal purposes of this rule are (1) to avoid the disruption of a continuing attorney-client relationship caused by the client's lawsuit against the attorney, while enabling the attorney to correct or mitigate the alleged error, and (2) to prevent the attorney from defeating a malpractice action by continuing to represent the client until the limitations period has expired. (Laird v. Blacker (1992) 2 Cal.4th 606, 618, 7 Cal.Rptr.2d 550, 828 P.2d 691, citing Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 17, 1977.) There are two issues with respect to Rallis's contention that the limitations period was tolled by a continuing attorney-client relationship. The first is whether the "specific subject matter" requirement is satisfied and the second relates to the "former firm" problem. We now discuss each of these issues.

a. Specific Subject Matter

The "specific subject matter" of the attorney's representation in which the alleged malpractice occurred may be difficult to define, particularly where the attorney has represented the client in numerous related matters, as occurred here. However, we construe this statutory language so as to effectuate the purposes of the tolling provision. (Calatayud v. State of California (1998) 18 Cal.4th 1057, 1064-1065, 77 Cal.Rptr.2d 202, 959 P.2d 360.) The construction of a statute and its application to a particular set of facts is a legal issue that we review de novo. (Kurtz v. Calvo (1999) 75 Cal.App.4th 191, 193, 89 Cal.Rptr.2d 99.) Accordingly, we conclude that the specific subject matter does not extend to litigation arising from the transactions in which the alleged malpractice occurred.
A client's relationship with an attorney who continues to represent the client in unrelated matters or related matters that do not involve the same specific subject matter as the representation in which the malpractice occurred may be disrupted when the client sues the attorney for malpractice. However, the plain language of the statute indicates that it was not intended to protect a continuing attorney-client relationship in those circumstances. (Code Civ. Proa, § 340.6, subd. (a)(2); see *776 Foxborough v. Van Atta (1994) 26 Cal. App.4th 217, 228-229, 31 Cal.Rptr.2d 525.) By heeding the legislative purpose to protect a continuing attorney-client relationship regarding the same specific subject matter, we must not extend the protection to a continuing attorney-client relationship regarding a matter that is merely related to the subject matter of the earlier representation.
Consideration of the statutory purpose of enabling an attorney to correct or mitigate an error assists us to delimit the circumstances in which the tolling provision applies. An attorney who commits an error while representing a client in a business transaction may, through further efforts, correct the error or mitigate its effects before the transaction closes. Even after the closing, the attorney may continue to perform tasks regarding the same transaction or supplementary tasks designed to achieve the objectives of the initial representation. Courts have recognized that continuing representation in those circumstances involves the same specific subject matter as the initial representation. (Crouse v. Brobeck, Phleger & Harrison (1998) 67 Cal.App.4th 1509, 1528-1529, 80 Cal.Rptr.2d 94; see Von Rott v. Johnson (1983) 148 Cal.App.3d 608, 613, 196 Cal.Rptr. 55.) "The focus should be on the objectives of the prior retention and whether the present activities fall within those objectives." (2 Mallen & Smith, Legal Malpractice, supra, § 21.12, p. 824.) However, litigation arising from a transaction in which malpractice occurred ordinarily is not simply a continuation of the earlier matter. A business transaction typically involves some positive economic benefit for the client. Whatever the objectives of the original transaction, the defendant's primary objective in litigation is loss prevention or allocation. After an attorney's transactional malpractice leads to litigation against the client, the client begins to incur defense costs and experience the disruption of litigation, and the attorney can no longer correct or mitigate the error to the degree that was possible before litigation ensued.[15] We believe that the attorney's defense of the client in those circumstances does not sufficiently satisfy the statutory purpose of enabling the attorney to correct or mitigate the error.
Moreover, the Legislature's concern that an attorney may attempt to defeat a malpractice action by continuing to represent the client until the limitations period has expired is most salient where the continuing representation involves the same matter and not a separate matter that ordinarily would require a separate retention, such as litigation arising from a business transaction.
Rallis cites Gurkewitz v. Haberman (1982) 137 Cal.App.3d 328, 187 Cal.Rptr. 14, O'Neill v. Tichy (1993) 19 Cal.App.4th 114, 25 Cal.Rptr.2d 162, and Crouse v. Brobeck, Phleger & Harrison, supra, 67 Cal.App.4th 1509, 80 Cal.Rptr.2d 94, in support of his argument that litigation arising from a transaction involves the same specific subject matter for purposes of tolling under the statute. In Gurkewitz, supra, the plaintiffs alleged malpractice by the defendant attorneys in their unsuccessful prosecution of an action against a third party. The attorneys continued to represent the plaintiffs on appeal. The court held that the representation in the specific subject matter continued after the appellate court's decision and extended to the date when the attorneys transmitted to the plaintiffs the successful respondent's amended memorandum of costs and advised *777 the plaintiffs that the representation had ended. (137 Cal.App.3d at pp. 331-333, 187 Cal.Rptr. 14.) The court stated, "We hold that, so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative." (Id at p. 333, 187 Cal.Rptr. 14.) Thus, Gurkewitz did not involve representation in litigation arising from a transaction in which the attorney had committed malpractice and does not support the proposition that representation in litigation arising from that transaction involves the same specific subject matter for purposes of tolling under the statute.
O'Neill v. Tichy, supra, involved the defendant attorneys' alleged malpractice in a business reorganization that resulted in claims of unfair labor practices against the plaintiffs. The defendants then represented the plaintiffs in proceedings before an administrative law judge and the National Labor Relations Board (NLRB) for several years, and continued to represent the plaintiffs regarding a potential settlement and appeal until the plaintiffs formally discharged them. (19 Cal.App.4th at pp. 117-118, 25 Cal.Rptr.2d 162.) The issue on appeal was whether the defendants' representation had ended for purposes of the statute when the plaintiffs retained counsel to investigate a malpractice claim, before the discharge. (Id at pp. 119-120, 25 Cal.Rptr.2d 162.) The court concluded that the plaintiffs' investigation and awareness of the defendants' malpractice did not preclude tolling of the limitations period based on continuous representation, and reversed the defendants' summary judgment. (Id at pp. 120-121, 25 Cal.Rptr.2d 162.) The court stated that there was conflicting evidence as to whether the defendants had continued to represent the plaintiffs in the same specific subject matter, but it did not describe that evidence or the parties' contentions on that issue. (Id. at p. 121, 25 Cal.Rptr.2d 162.) It cited the passage from Gurkewitz v. Haberman, supra, 137 Cal.App.3d at page 333, 187 Cal. Rptr. 14, quoted above, but did not explain its application to the facts at issue. (O'Neill v. Tichy, supra, 19 Cal.App.4th at p. 121, 25 Cal.Rptr.2d 162.) To the extent that O'Neill suggests that litigation arising from a transaction may involve the same specific subject matter for purposes of tolling under the statute, the suggestion appears to be ill-considered and we decline to follow it.
Crouse v. Brobeck, Phleger & Harrison, supra, superficially appears to promote that interpretation of O'Neill, supra, in its own dictum: "Under O'Neill, when advice or action on a business transaction is negligent, and the attorney continues representing the client to defend or further the positions based on the original advice or action, the continuing representation involves the same specific subject matter." (Crouse v. Brobeck, Phleger & Harrison, supra, 67 Cal.App.4th at p. 1539, 80 Cal. Rptr.2d 94.) However, Crouse involved a continuous transactional representation from restructuring a promissory note to negotiating its repayment, not litigation arising from that transaction. (Id at pp. 1522, 1528, 1530, 80 Cal.Rptr.2d 94.) Thus, it provides no support for the conclusion advocated by Rallis.
The objectives of the defendants' earlier alleged representation of Rallis concerned the successful operation of the corporations and later their sale. In contrast, the representation of Rallis in the Florida litigation served the different purpose of avoiding personal liability arising from those prior matters. Even if the defendants had successfully defended against Moloney's complaint, they could not correct or mitigate a prior error or omission to the degree that was possible at the time of the original representation.
We therefore conclude that the defendants' alleged representation of Rallis in the Florida litigation did not arise from the same specific subject matter as their representation of Rallis in the prior matters and did not toll the limitations period for malpractice arising from those *778 matters. All of Rallis's causes of action against the defendants arising from the prior matters are therefore barred by the statute of limitations.[16] This conclusion results in our affirmance of the judgments entered in favor of Hahn & Cazier, Hahn, Cazier & Smaltz, and Morgan Lewis because Rallis's claims against those firms arose solely from the prior matters.

b. Former Law Firm

Rallis's remaining causes of action are those arising from the Florida litigation and are against Cassady, Cassady Corporation, Cassady & Klein, and Davis Wright. The limitations period on those causes of action was tolled as to those defendants if Cassady's continuous representation of Rallis in the Florida litigation tolled the limitations period as to each defendant as a matter of law. Davis Wright contends Cassady's representation of Rallis in the Florida litigation did not toll the limitations period on claims against Davis Wright after Cassady had left the firm in July 1993.[17] We disagree.
An attorney and his or her law firm both may be liable for the attorney's malpractice committed while the attorney was employed by or was a member of the firm. (See 1 Mallen & Smith, Legal Malpractice, supra, § 5.3, pp. 335-336, § 5.8, p. 382.) The firm's liability is vicarious based on the attorney's status as an employee or partner. (Perez v. Van Groningen & Sons, Inc. (1986) 41 Cal.3d 962, 967, 227 Cal.Rptr. 106, 719 P.2d 676; former Corp.Code, §§ 15013 & 15015;[18]Blackmon v. Hale (1970) 1 Cal.3d 548, 557, 83 Cal.Rptr. 194, 463 P.2d 418.) After the attorney leaves the firm, malpractice liability persists as to both the attorney and the firm based on the attorney's earlier actions. (Former Corp.Code, § 15036, subd. (1); see Beam v. Paulsen (1993) 21 Cal. App.4th 89, 97-98, 26 Cal.Rptr.2d 486; Redman v. Walters (1979) 88 Cal.App.3d 448, 453,152 Cal.Rptr. 42.)
The question before us is whether the limitations period for a law firm's vicarious liability arising from the attorney's malpractice is tolled while the attorney, but not the attorney's former law firm, continues to represent the client. The tolling provision refers to the time that "[t]he attorney," not the law firm, continues to represent the client. (Code Civ. Proa, § 340.6, subd. (a)(2).) Because neither the provision establishing the limitations period nor the tolling provision expressly refers to a law firm that may be vicariously liable, however, this language alone does not end our inquiry.[19]
Again, we interpret the statute in accordance with its purposes. (Calatayud v. State of California, supra, 18 Cal.4th at pp. 1064-1065, 77 Cal.Rptr.2d 202, 959 P.2d 360.) It is impractical to believe that a client could sue his or her current attorney's former law firm based on the attorney's alleged malpractice in the same specific subject matter as the attorney's *779 current representation without disrupting that current representation and thereby impairing the attorney's ability to correct or mitigate the error. The law firm ordinarily would cross-complain against the attorney, resulting in the same adverse consequences that the statute was intended to avoid (see Laird v. Blacker, supra, 2 Cal.4th at p. 618, 7 Cal.Rptr.2d 550, 828 P.2d 691). This was the principal reason for the holding in Beane v. Paulsen, supra, 21 Cal.App.4th at page 99, 26 Cal. Rptr.2d 486, that the tolling provision applied to the client's cause of action against her current attorney's former law firm.
Moreover, if the rule were as Davis Wright urges, an attorney who continues to represent the client in the same specific subject matter could defeat the client's cause of action against the attorney's former law firm, and preclude the firm's cross-complaint against the attorney, by continuing to represent the client until the limitations period has run on the claim against the firm, a result that the statute was intended to avoid (see Laird v. Blacker, supra, 2 Cal.4th at p. 618, 7 Cal.Rptr.2d 550, 828 P.2d 691).
The court in Crouse v. Brobeck, Phleger & Harrison, supra, 67 Cal.App.4th at pages 1535-1540, 80 Cal.Rptr.2d 94, held that the continuing representation tolling provision did not apply to a client's cause of action against her current attorney's former law firm, and declined to follow Beane v. Paulsen, supra. The primary grounds for the court's holding were that a defendant cannot waive the statute of limitations defense on behalf of another coobligor and that a former partner has no authority to bind other former partners after the partnership is dissolved. (Crouse, at pp. 1538-1539, 80 Cal.Rptr.2d 94.) We find those legal principles to be inapposite.
First, an attorney who continues to represent the client does not waive the statute of limitations defense, but only tolls the commencement of the limitations period.[20] The defense is still valid and can be asserted by both the attorney and the law firm if the client does not timely sue after the attorney's continuing representation has ended. The cases cited in Crouse v. Brobeck, Phleger & Harrison, supra, 67 Cal.App.4th at page 1538, 80 Cal.Rptr.2d 94, for the proposition that a co-obligor cannot waive the statute of limitations defense on behalf of another co-obligor involved written acknowledgments reviving debts that were previously barred by the statute of limitations. Those cases held, under Code of Civil Procedure sections 360 and 360.5 and common law, that the acknowledgments were not binding against co-obligors who did not sign them and that the nonsignatory co-obligors had not waived the statute of limitations defense. (Bemer v. Bemer (1957) 152 Cal.App.2d 766, 772-773, 314 P.2d 114; Steiner v. Croonquist (1951) 238 P.2d 690, 108 Cal. App.2d Supp. 895, 898-899.) Those cases did not involve the tolling of the limitations period by operation of law as to an existing liability, however, as here.
Second, an attorney whose continued representation tolls the limitations period against the law firm does not bind the attorney's former partners by creating an obligation or liability. If the malpractice liability arose while the attorney was a member of the firm, the attorney's later actions do not create that liability. The cases cited in Crouse v. Brobeck, Phleger & Harrison, supra, 67 Cal.App.4th at page 1538, 80 Cal.Rptr.2d 94, for the proposition that an attorney cannot bind former partners involved liabilities or tolling agreements that were created after the attorney *780 had withdrawn from the partnership. (Sears v. Starbird (1889) 78 Cal. 225, 229, 20 P. 547 [stated in dictum, "after the dissolution of the partnership one partner cannot revive a debt barred by the statute.... [Citations.]]"; Blackmon v. Hale, supra, 1 Cal.3d at p. 560, 83 Cal.Rptr. 194, 463 P.2d 418 [held that an attorney who withdrew from a firm before his former partner's tortious act was not liable as a partner]; Williams v. Ely (1996) 423 Mass. 467, 668 N.E.2d 799, 807-808 [held that attorneys who withdrew from a firm before their former partner executed a tolling agreement were not bound by the tolling agreement].) Again, those cases did not involve the tolling of the limitations period by operation of law as to an existing liability.
Crouse v. Brobeck, Phleger & Harrison, supra, 67 Cal.App.4th at page 1539, 80 Cal.Rptr.2d 94, also justified its holding in part on the ground of fairness, stating that if the limitations period were tolled as to former partners who did not continue to represent the client, they would suffer the harm of tolling but would not enjoy the benefit of the opportunity to correct or mitigate the alleged error. If the attorney who continues to represent the client corrects or mitigates the error, however, the law firm benefits by not being sued or by having its potential liability reduced. The Crouse court also noted the unfairness of tolling the limitations period as to a law firm when the firm had no part in the decision of its former member to continue to represent the client. (Ibid.) Again, we note the benefits that may accrue to the law firm from that continuing representation and defer to the legislative intent reflected in the statutory purposes discussed above.
We conclude that the limitations period for a legal malpractice action under Code of Civil Procedure section 340.6 is tolled as to the attorney and the attorney's former law firm while the attorney continues to represent the client in the same specific subject matter, and the fact that the attorney's former law firm does not continue to represent the client is immaterial. As a result, provided that Rallis's factual assertions with respect to their representation of him personally in the Florida litigation are proven at trial, the limitations period as to defendants Cassady, Cassady Corporation, Cassady & Klein, and Davis Wright was tolled and their statute of limitations defense must fail.

DISPOSITION
The judgments in favor of Hahn & Cazier, Hahn, Cazier & Smaltz, and Morgan Lewis are affirmed. The judgments in favor of Cassady, Cassady Corporation, Cassady & Klein, and Davis Wright are reversed, and the matter is remanded for further proceedings not inconsistent with the views expressed herein. Hahn & Cazier, Hahn, Cazier & Smaltz, and Morgan Lewis shall recover their costs on appeal as against Rallis. Rallis shall recover his costs on appeal as against Cassady, Cassady Corporation, Cassady & Klein, and Davis Wright.
KLEIN, P.J., and KITCHING, J., concur.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] We also conclude that the tolling of the limitations period resulting from an attorney's continued representation of the client extends to a law firm with which the attorney was associated at the time the acts of professional negligence were committed.
[2] These facts are either undisputed, alleged in the complaint and not controverted by evidence in support of the summary judgment motions, or supported by evidence in opposition to the motions. We resolve any conflicts in the evidence in favor of the party opposing summary judgment in accordance with the standard of review on appeal from a summary judgment (discussed post).
[3] Chronologically, these law firms were Hahn & Cazier and Hahn, Cazier & Smaltz, whose representation commenced in 1969 and continued through January 31, 1987; Morgan Lewis, whose representation spanned thirteen months commencing February 1, 1987 and continuing through March 4, 1988; Cassidy & Klein, whose representation initially covered a period of about seventeen months commencing March 5, 1988 and continuing through July 31, 1989; Davis Wright, whose representation lasted from August 1, 1989 to July 13, 1993; and Cassady & Klein, who once again represented certain business organizations in which Rallis was an officer, director and/or shareholder for a period of about six months from July 14, 1993 through January 1994 (when the events about which Rallis complains concluded) and thereafter to November 1994. During this period, Cassady was the principal attorney contact between each of these law firms and Rallis and the several business entities with whom Rallis was associated.
[4] The failure to give such advice is one of the acts of professional negligence that Rallis has alleged against the defendants.
[5] Some of this evidence was not before the court when it granted the initial summary judgment motions but was cited in opposition to the later summary judgment motions. We therefore do not consider those facts for purposes of our review of the initial motions. Our task is to determine whether the trial court erred based on the record before it at the time of the challenged ruling, not based on evidence later submitted. (Brosterhous v. State Bar (1995) 12 Cal.4th 315, 325, 48 Cal. Rptr.2d 87, 906 P.2d 1242.)
[6] Rallis filed a first amended complaint on February 27, 1995 and during certain law and motion proceedings, was "deemed" to have filed a second amended complaint on May 28, 1996.
[7] On appeal, Rallis challenges only the trial court's ruling on the malpractice causes of action.
[8] Rallis does not challenge the ruling on the new trial motion in his opening brief on appeal and therefore waives any error. (Wurzl v. Holloway (1996) 46 Cal.App.4th 1740, 1754, fn. 1, 54 Cal.Rptr.2d 512.)
[9] The Jordache decision overruled ITT Small Business Finance Corp. v. Niles, supra, 9 Cal.4th 245, 36 Cal.Rptr.2d 552, 885 P.2d 965, on which the trial court had relied in its August 1998 order. (Jordache Enterprises, Inc. v. Brobeck, Phleger,& Harrison, supra, 18 Cal.4th at p. 763, 76 Cal.Rptr.2d 749, 958 P.2d 1062.)
[10] Rallis does not contend the defendants owed him a duty of care as a nonclient, so we need not address that issue.
[11] An attorney representing a corporation owes his or her professional duties to the corporation as an entity and not to its officers, directors, or shareholders individually, and must avoid conflicts of interest. (Rules of Prof. Conduct, rules 3-600 & 3-310.)
[12] Some of these circumstances frequently arise in closely held corporations with a small number of shareholders who are active in corporate management. (See Mitchell, Professional Responsibility and the Close Corporation: Toward a Realistic Ethic (1989) 74 Cornell L.Rev. 466, 476-481.)
[13] Code of Civil Procedure, section 340.6, subdivision (a), provides:

"(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; ..."
[14] Rallis does not challenge the trial court's determination that he discovered or reasonably should have discovered all of the alleged malpractice more than one year before filing his complaint in this action or argue that he did not suffer an actual injury arising from the defendants' alleged malpractice in the Florida litigation more than one year before filing his complaint.
[15] The court in Foxborough v. Van Atta, supra, noted a "significant change" in the attorney's "role and responsibilities" from representing the plaintiff in a real property transaction to acting as an expert witness and consultant in litigation arising from the transaction. (26 Cal.App.4th at pp. 222-223, 229, 31 Cal. Rptr.2d 525.) Although it held that the representation was not continuous due to a four-year lapse in communication, the court also appeared to suggest that the representation did not involve the same specific subject matter. (Id. at pp. 228-229, 31 Cal.Rptr.2d 525.)
[16] As noted above, Rallis concedes that he discovered or reasonably should have discovered the alleged malpractice in the prior matters more than one year before filing his complaint in this action, and he suffered an actual injury with respect to that alleged malpractice more than one year before filing his complaint.
[17] Cassady, through his professional corporation, discontinued his association with Davis Wright in July 1993 and practiced with Cassady & Klein from and after that date.
[18] The Uniform Partnership Act (former Corp.Code, § 15001 et seq.) was repealed effective January 1, 1999 (Stats. 1996, ch. 1003, § 1.2, p. 88), and replaced by the Uniform Partnership Act of 1994 (Corp.Code, § 16100 et seq.). The former act governs actions commenced and rights accrued before January 1, 1997 (Corp.Code, § 16112), and therefore governs the present action.
[19] Code of Civil Procedure section 340.6 establishes the limitations period for "[a]n action against an attorney." However, it applies to actions against both the attorney and the law firm. (See, e.g., Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, supra, 18 Cal.4th 739, 76 Cal.Rptr.2d 749, 958 P.2d 1062.)
[20] A waiver of the statute of limitations requires a writing signed by the defendant who waives the defense. (Code Civ. Proc., § 360.5.) Actions by a defendant that toll the limitations period do not effect a waiver. Accordingly, we cannot accept the characterization of an attorney's continuing representation of a client as a waiver of the statute of limitations defense, as stated in Crouse v. Brobeck, Phleger & Harrison, supra, 67 Cal. App.4th at page 1539, 80 Cal.Rptr.2d 94.